J-S37026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DACITA SCOTT | : | |
| | : | |
| Appellant | : | No. 1022 EDA 2020 |

Appeal from the Judgment of Sentence Entered March 13, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0003689-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DACITA SCOTT | : | |
| | : | |
| Appellant | : | No. 1023 EDA 2020 |

Appeal from the Judgment of Sentence Entered March 13, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0009896-2017

BEFORE: PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.: **FILED JANUARY 18, 2022**

_____

[*] Former Justice specially assigned to the Superior Court.

Dacita Scott (Appellant) appeals from the judgment of sentence imposed after the trial court revoked her probation at the above docket numbers.[1] After careful consideration, we affirm.

On September 5, 2017, Appellant broke into the home of her "ex," R.S., and took two bags of his clothing and two gallons of water. N.T., 11/14/19, at 8, 27. When R.S. told Appellant "to stop," she "threatened him with a knife." *Id.* at 27. No one was injured and Appellant "left the house and was subsequently arrested." *Id.* At docket CP-51-CR-0009896-2017, the Commonwealth charged Appellant with theft by unlawful taking (theft), possession of an instrument of crime (PIC), and defiant trespass.[2]

On March 18, 2018, Appellant entered R.S.'s home in violation of a protection from abuse (PFA) order. N.T., 11/14/19, at 28. At docket CP-51-CR-0003689-2018, the Commonwealth charged Appellant with defiant trespass and contempt of a PFA order.[3]

Appellant appeared before the trial court on November 14, 2019, and entered a global negotiated guilty plea to theft, PIC, contempt of a PFA order,

---

[1] On April 10, 2020, Appellant filed a notice of appeal at each docket, in compliance with *Commonwealth v. Walker*, 185 A.3d 969, 971 (Pa. 2018). On June 18, 2021, this Court consolidated Appellant's appeals *sua sponte*.

[2] 18 Pa.C.S.A. §§ 3921(a), 907(a), and 3503(b).

[3] 18 Pa.C.S.A. § 3503(b) and 23 Pa.C.S.A. § 6114(a).

and two counts of defiant trespass.[4]  The court sentenced Appellant, "consistent with the negotiations," to 3 years of probation.  N.T., 11/14/19, at 37-38.

Approximately six weeks later, on December 23, 2019, the Commonwealth filed a **Gagnon I**[5] summary alleging that Appellant had committed multiple reporting violations, tested positive for PCP, and failed to attend her initial mental health evaluation.[6]  **Gagnon I** Summary, 12/23/19, at 2.  Appellant appeared before the court on January 9, 2020 for a **Gagnon II** hearing.  After the hearing, the trial court concluded that Appellant "constitutes an immediate present danger," found her to be in violation of her supervision, and revoked her probation.  **See** N.T., 1/9/20, at 6.  The court deferred sentencing for the preparation of a forensic intensive recovery evaluation, mental health evaluation, and pre-sentence investigation (PSI) report.  **Id.** at 4.  The court stated that it wanted "to look at commitment, recommendations for treatment, and a full dual diagnosis evaluation."  **Id.** at 7.

On March 13, 2020, the court resentenced Appellant to 2½ - 5 years of incarceration, followed by 5 years of probation.  Defense counsel made an oral

---

[4] Appellant also pled guilty to a separate charge of contempt of a PFA order at docket number MC-51-CR-0020964-2019.  N.T., 11/14/19, at 29.

[5] **See Gagnon v. Scarpelli**, 411 U.S. 778 (1973).

[6] The Commonwealth stated that Appellant was "being supervised by the Domestic Violence Unit for" violating "active PFA order … 1803V7007."  **Gagnon I** Summary, 12/23/19, at 2.

motion for the court to reconsider its sentence, which the court denied. *See* N.T., 3/13/20, at 24-26. Appellant timely appealed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents one issue for review:

Was the VOP court's imposition of a 2 year and 6 months to 5 year sentence of imprisonment, followed by 5 years of probation, greater than necessary to vindicate the authority of the court, where [Appellant] committed the technical violation of absconding for 60 days during a drug relapse?

Appellant's Brief at 3.

Appellant challenges the discretionary aspects of sentencing. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Id.* We conduct this four-part test to determine whether:

(1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "A defendant presents a substantial question when [s]he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process."

*Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citations omitted).

Appellant has complied with the first three prongs of this test by raising her issue at sentencing, filing timely notices of appeal, and including in her brief a Rule 2119(f) concise statement. *See* Appellant's Brief at 8-9. Therefore, we examine whether Appellant presents a substantial question.

Appellant argues that the trial court improperly "imposed a sentence of total confinement for technical violations when the prerequisites in 42 Pa.C.S. § 9771(c) were not met[.]" Appellant's Brief at 8. Appellant also asserts her sentence "is disproportionate to the conduct at issue and was not justified by sufficient reasons." *Id.* Both claims raise a substantial question. *See Commonwealth v. Lucky*, 229 A.3d 657, 664 (Pa. Super. 2020). We thus examine the merits of Appellant's sentencing issue.

Preliminarily, we recognize,

the proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion ... [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a

particular offense based upon an evaluation of the individual circumstances before it.

***Commonwealth v. Moury***, 992 A.2d 162, 169–70 (Pa. Super. 2010) (citation omitted).

With respect to her violation, Appellant states:

she failed to report to her probation officer on two occasions, failed to complete a court-ordered mental health assessment and failed her first and only drug test. The VOP sentence imposed was the statutory maximum consisting of 2½ to 5 years' confinement on the most serious charge of Theft, graded as a first-degree misdemeanor.

Appellant's Brief at 6. Appellant argues her sentence is "disproportionate to the violation and far in excess of what was necessary to foster Appellant's rehabilitation or protect the public." ***Id.*** at 7. Appellant claims the trial court "failed to take into consideration the nature and characteristics of the underlying offense," as well as the provisions of the Sentencing Code. ***Id.*** She also contends the court "relied on its own erroneous belief that Appellant had continued to maintain prohibited contact" with R.S. during probation. ***Id.*** She maintains the court "improperly weighed the sentencing factors it did consider – choosing to focus on the inconsistent reporting and failed drug screen, fully discounting her employment, her struggles with her mental health and physical health as well as the abuse she had endured earlier in life." ***Id.*** The Commonwealth agrees with Appellant. ***See*** Commonwealth Brief at 2 (stating trial court "improperly considered [Appellant's] pre-probationary conduct" and failed to demonstrate that total confinement "was

necessary to either prevent [Appellant] from committing future crimes or vindicate its authority."). Upon review, and consistent with *Moury*, *supra*, we do not find the sentence to be "clearly erroneous."

We first address Appellant's contention that the trial court "relied on its own erroneous belief that Appellant had continued to maintain prohibited contact with [R.S.] during probation." Appellant's Brief at 7. This claim is belied by the record.

We have explained:

A sentence is invalid if the record discloses that the sentencing court may have relied in whole or in part upon an impermissible consideration. This is so because the court violates the defendant's right to due process if, in deciding upon the sentence, it considers unreliable information, or information affecting the court's impartiality, or information that it is otherwise unfair to hold against the defendant.

*Commonwealth v. Downing*, 990 A.2d 788, 793 (Pa. Super. 2010) (citations omitted).

Further,

In deciding whether a trial judge considered only permissible factors in sentencing a defendant, an appellate court must, of necessity, review all of the judge's comments. Moreover, in making this determination it is not necessary that an appellate court be convinced that the trial judge in fact relied upon an erroneous consideration; it is sufficient to render a sentence invalid if it reasonably appears from the record that the trial court relied in whole or in part upon such a factor.

*Commonwealth v. Scott*, 860 A.2d 1029, 1030 (Pa. Super. 2004) (citation omitted).

Instantly, the trial court never referenced Appellant having prohibited contact with R.S. when it stated the reasons for the sentence. *See* N.T., 3/13/20, at 17-21. To the contrary, the court expressly acknowledged Appellant's testimony that she had stopped contacting R.S.:

> THE COURT: Well, here's the problem, and I get that it's a complicated one, but even when I handled the violation hearing, there were some stated concerns about whatever contact you had with [R.S.] at the time that you were prohibited from doing that. Your reporting of what you're doing is conflicting.
>
> [Appellant]: Excuse me, Your Honor. Can I ask a question? My violation with the gentleman that him and I – I text him I loved him, that was from a year ago. That has – that wasn't – that was from 2017 –
>
> THE COURT: **I understand that**.
>
> [Appellant]: That wasn't recent. I haven't been –
>
> THE COURT: Okay. **I'm glad you're not having any contact with him now**. That's very healthy. Okay. Duly noted. Thank you.

N.T., 3/13/20, at 16 (emphasis added).

As indicated above, the trial court understood that Appellant was no longer contacting R.S. As to Appellant's argument that the court disregarded the Sentencing Code, we reiterate the court's "broad discretion" and our "concomitantly deferential standard of appellate review" based on the sentencing court being "in the best position to determine the particular penalty[.]" *Moury*, *supra*.

> [A] sentencing court may choose from any of the sentencing options that existed at the time of the original sentencing, including incarceration. 42 Pa.C.S.[A.] § 9771(b). However, the

imposition of total confinement upon revocation requires a finding that either "(1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that [s]he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court." 42 Pa.C.S. 9771(c).

***Commonwealth v. Swope***, 123 A.3d 333, 338 (Pa. Super. 2015) (footnote omitted). The court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence. ***Commonwealth v. Coolbaugh***, 770 A.2d 788, 792 (Pa. Super. 2001). A resentence may not exceed the statutory limits of the sentence, including allowable deductions for time served. ***Id.***

Our Supreme Court has stated,

following revocation, a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statutes in question. Simply put, since the defendant has previously appeared before the sentencing court, the stated reasons for a revocation sentence need not be as elaborate as that which is required at initial sentencing. The rationale for this is obvious. When sentencing is a consequence of the revocation of probation, the trial judge is already fully informed as to the facts and circumstances of both the crime and the nature of the defendant, particularly where, as here, the trial judge had the benefit of a PSI during the initial sentencing proceedings. ***See Walls***, 592 Pa. at 574 n.7, 926 A.2d at 967 n. 7 ("Where [PSI] exist[s], we shall continue to presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.").

***Commonwealth v. Pasture***, 107 A.3d 21, 28 (Pa. 2014).

Here, the trial court stated it had "reviewed the mental health evaluation, as well as the … full [PSI] report." N.T., 3/13/20, at 9. The court then addressed Appellant at length:

Okay. All right. [Appellant], the difficulty that has been presented is that I and the Commonwealth and your counsel, and apparently prior efforts as well, have done everything we can do to help you, **and the only impediment to that was you**.

And your recording of your history and minimizing your drug activity, even as reflected in the presentence investigation, is most troublesome. I'm going to go over some salient points that are recollected and that I reviewed.

I think you're 44 years old now. You reflected that there were difficulties in your family growing up. You reflected that once your parents separated, your mom was the primary caretaker of you. You reflected as a teenager, you viewed your mom as overprotective and you were rebellious. And you reflected that your father was abusive, physically and verbally.

You reflected that your dad was an alcoholic and more volatile when intoxicated. You reflected that you, yourself, w[ere] involved in at least one abusive relationship. You reflected that your housing has changed from state to state.

You did acknowledge that you had made poor decisions throughout your life. You reflected that you did receive counseling back – when you reported abuse back when you were much younger. You stated that you had five children with four different men throughout time, that your three older children did, after being placed with other folks did do well in life so far, attending college.

Your daughter graduated with a business major, University of Pittsburgh. Your second oldest daughter [went] to Harcum. Your son's reportedly attending New England School of Culinary Arts.

You indicated that two of your children had been diagnosed with [] mental health difficulties, and I believe DHS is involved with the care of your younger children, or child. Not sure which.

- 10 -

In terms of your education, you reflected that you attended University City High School, withdrew because you became pregnant with your first child in 12th grade. You did go on, attend vocational training through Delaware County. You obtained a certificate as a nursing assistant but no additional training, and it looks like the employment that you've indicated was basically receiving assistance for caring for your mother.

You did report a last employment, I think, with Grass Roots for $100 worth in 2019. That was verified, but it would appear that your earlier employment was earlier in time.

Looking at this – and then I will get to the diagnosis and the hospitalizations – that you appeared to have gone off the rails, as they say, and you've struggled through time. I recognize that. You've reported that you've been diagnosed with bipolar disorder, depression, anxiety, schizophrenia, post-traumatic stress disorder, and attention deficit hyperactive disorder, and that you have had treatment on and off since the age of ten.

The therapeutic care that you've indicated you received was during childhood through Community Council. You reported that in your 30s, you were involved or committed and received two hospitalizations. It was reported for the last three years, you have been receiving mental health-related medication through Penn Presbyterian Medical Center. I'm assuming that that's where you were obtaining your Suboxone.

However, **all of those efforts have been repeatedly defeated because of your abuse of alcohol and various types of narcotic substances**. You cannot expect to progress with mental health difficulties if you invade your body with narcotics. Particularly, you reported that you're drinking alcohol, used marijuana, powder cocaine, and progressed to Percocet, heroin, and you claimed that you had not been using any of the same, and that you claim that you unknowingly [] ingested PCP. **I find that incredulous at best**.

Your avoidance of being drug tested as pursuant to the order of the [c]ourt reflected that indeed you were back using narcotics. And PCP, as you well know, is a very serious, significant hallucinogenic, and that combined with your proper treatment for your other mental health problems, is a recipe for disaster.

- 11 -

And I can well infer from all these collective facts, ma'am, that the difficulties that were presented in your respective relationships, including the one with [R.S.] and the other person with the other PFA, may have stemmed and been associated with that because **if you are high on PCP while you are supposed to be taking your medicines, you're not in your right mind, and that's when very violent things can happen**.

And indeed, you're very fortunate that it has not been worse, and you are very fortunate that we are once again presented with an opportunity to do what you say you wish to do. But part and parcel of doing that, [Appellant], is taking firm responsibility for your actions.

It's not just a desire to change; you have to do it. The keys were always in your hands, [Appellant].

And I knew the day you were before me on that negotiated guilty plea because of how you presented yourself that it would not be long before you would come back.

**My sentence is going to reflect that I firmly believe that you present a danger to yourself and to others and are at high risk for recidivism**, and I don't want to see anything bad happen to anybody, particularly you.

N.T., 3/13/20, at 17-21 (emphasis added).

The above commentary reveals the trial court's determination that "probation had been ineffective[.]" Trial Court Opinion, 12/15/20, at 8. In addition to indicating that incarceration is necessary to vindicate the court's authority, the court found Appellant will likely commit another crime if she is not incarcerated, **see** N.T., 3/13/21, at 21 (advising Appellant, "you present a danger . . . and are at high risk for recidivism"). **Swope**, **supra**. In alluding to Appellant "initially receiv[ing the benefit of] a lenient sentence," **Pasture**, 107 A.3d at 28, the court stated it "had at length evaluated [Appellant's]

situation, and I feel that this is best." N.T., 3/13/20, at 24. The court reviewed Appellant's PSI as well as other reports, and considered her personal history which included mitigating factors and myriad struggles. We disagree with Appellant's claim that the court disregarded the Sentencing Code and "improperly weighed" the factors it considered. Appellant's Brief at 7.

In sum, "the record as a whole" reflects the sentencing court's consideration of the facts and [Appellant's] character," *Crump*, 995 A.2d at 1283, and we discern no abuse of discretion. *Moury*, 992 A.2d at 170 ("An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion.") (citation omitted); *see also id.* ("the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.").

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/18/2022